**REGENCY TRANSPORTATION GROUP, LTD., Petitioner**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.
Decided May 16, 2012.

---

William A. Gray, Pittsburgh, for petitioner.

John E. Herzog, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge,[1] and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Regency Transportation Group, Ltd. (Regency) petitions for review of the January 14, 2011, order of the Pennsylvania Public Utility Commission (Commission) denying Regency's exceptions and objection and adopting as modified the initial decision and order of an administrative law judge (ALJ), which concluded that the Commission was not preempted by federal law from collecting the Fiscal Year (FY) 2009–2010 assessment from Regency for intrastate passenger service. We affirm.

The facts as found by the ALJ and adopted by the Commission may be summarized as follows. Regency holds a certificate of public convenience from the Commission authorizing it to provide limousine, airport transfer and group and party services within the Commonwealth. Regency also holds a common carrier certificate from the Federal Motor Carrier Safety Administration (FMCSA) authorizing it to provide interstate charter and special operations services. Regency operates limousines pursuant to both its intrastate and interstate charter authorizations. The limousine service provided by Regency generally involves the transportation of multiple passengers for a common purpose to a fixed destination where a single payment is made for the service, as opposed to each individual passenger paying a charge.

Section 510 of the Public Utility Code (Code), 66 Pa.C.S. § 510, specifically au-

thorizes the Commission to assess and collect an annual fee from every public utility which operates and engages in business within the Commonwealth. The Commission calculates this fee by determining the total amount of its expenditures for the preceding calendar year, allocating a portion of this total to each group of utilities furnishing the same kind of service, and assessing each public utility within the group a proportionate share based upon the utility's reported gross intrastate operating revenues. See Section 510(b) of the Code, 66 Pa.C.S. § 510(b).

Additionally, as an interstate motor carrier, Regency is required to register and pay an annual fee under the Unified Carrier Registration Act of 2005 (UCR Act), 49 U.S.C. § 14504a, based upon the number of commercial motor vehicles it operates. A notice accompanying the UCR Act registration form defines a commercial motor vehicle as a vehicle designed to transport 11 or more passengers, including the driver. Regency remained properly registered under the UCR Act at all relevant times. (Findings of Fact Nos. 1–13.)

Regency did not receive an assessment from the Commission for FY 2007–2008 or FY 2008–2009. However, the Commission did provide Regency with an assessment in the amount of $20,170.00 for FY 2009–2010 based upon the gross intrastate operating revenues reported by Regency for all intrastate passenger service, with the exception of group and party service provided in vehicles with seating capacities of 16 or more. Regency filed an objection to the assessment alleging that the UCR Act prohibits the Commission from levying assessments against interstate motor carriers. The Commission had sent all motor carriers, including Regency, a letter dated Feb-

---

1. This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

ruary 23, 2009, advising that some UCR registered carriers holding authority from the Commission to operate multiple types of passenger services would be assessed on their non-UCR related passenger operations. (Findings of Fact Nos. 9, 19–27.)

The matter was assigned to the ALJ and a hearing was held on April 13, 2010. Thomas Miller, Regency's owner, testified regarding Regency's authority as described above. On cross-examination, Miller indicated that Regency paid a UCR fee of $231.00 in 2007, 2008, and 2009 based upon the number of its UCR-registered vehicles. (R.R. at 17a–39a.) Stanley Heintzelman, an assessment supervisor for the Commission's Bureau of Administrative Services, testified that all passenger carriers received a notice prior to FY 2009–2010 warning them of possible assessments for passenger services that could not accommodate 16 or more people. Heintzelman acknowledged on cross-examination that Regency did not receive an assessment in 2007 or 2008 because it was registered under the UCR Act. (R.R. at 40a–49a.)

By initial decision and order dated August 20, 2010, the ALJ denied Regency's objection, concluding that the preemption provisions of the UCR Act only applies to charter bus service, which is limited to group and party service in vehicles with seating capacities of 16 or more passengers, including the driver. The ALJ rejected an argument by Regency that its limousine service qualified as "charter bus transportation" under section 14501(a)(1)(C) of the Federal Aviation Administration Authorization Act of 1994

(FAAAA), 49 U.S.C. § 14501(a)(1)(C), noting that a similar argument was recently rejected by a federal court in *Kozak v. Hillsborough Public Transportation Commission*, 695 F.Supp.2d 1285 (M.D.Fla. 2010), *affirmed*, 644 F.3d 1347 (11th Cir. Fla.2011).

The ALJ further concluded that the UCR Act did not prohibit the Commission from assessing revenues generated on all intrastate operations by a motor carrier that holds both intrastate and interstate passenger operating authority. The ALJ reasoned that section 14504a(c)(1)(D)(ii)(I) of the UCR Act only rendered "charter bus service" exempt from assessment. The ALJ noted that the Commission's decision to assess interstate motor carriers in FY 2009–2010 was premised upon a June 2008 amendment to section 14504a(c)(2) of the UCR Act, which had precluded state assessment of any amount in excess of the assessment to exclusively *interstate* carriers (exclusively interstate carriers would not have been assessed by the state because there would be no intrastate operations). The 2008 amendment permitted states to assess intrastate operations of interstate carriers, but only up to the level of those carriers engaged exclusively in *intrastate* transportation. Regency thereafter filed exceptions with the Commission alleging that the ALJ's conclusions were in error. By opinion and order dated January 14, 2011, the Commission denied Regency's exceptions and objection and adopted as modified the ALJ's initial decision and order.[2]

■ On appeal,[3] Regency argues that the Commission erred in failing to con-

---

2. The Commission modified the ALJ's initial decision and order to address the exceptions filed by Regency and to provide Regency with an installment plan to pay the assessment.

3. Our scope of review of the PUC's order is limited to determining whether constitutional

rights were violated, an error of law was committed, or whether the findings, determinations or order are supported by substantial evidence. *Popowsky v. Pennsylvania Public Utility Commission*, 868 A.2d 606 (Pa. Cmwlth.2004).

clude that it was precluded from levying an assessment under federal law, namely section 14504a of the UCR Act and section 14501(a)(1)(C) of the FAAAA.[4] We disagree.

Section 14504a(c) of the UCR Act, 49 U.S.C. § 14504a(c), provides as follows:

(c) Unreasonable burden. For purposes of this section, it shall be considered an unreasonable burden upon interstate commerce for any State or any political subdivision of a State, or any political authority of two or more States—

(1) to enact, impose, or enforce any requirement or standards with respect to, or *levy any fee or charge on,* any motor carrier or motor private carrier providing transportation or service subject to jurisdiction under subchapter I of chapter 135 (in this section referred to as an "interstate motor carrier" and an "interstate motor private carrier", respectively) in connection with—

(A) the registration with the State of the interstate operations of the motor carrier or motor private carrier;

(B) the filing with the State of information relating to the financial responsibility of a motor carrier or motor private carrier pursuant to sections 31138 or 31139;

(C) the filing with the State of the name of the local agent for service of process of the motor carrier or motor private carrier pursuant to sections 503 or 13304; or

(D) the annual renewal of the intrastate authority, or the insurance filings, of the motor carrier or motor private carrier, or *other intrastate filing requirement necessary to operate within the State* if the motor carrier or motor private carrier is—

(i) registered under section 13902 or section 13905(b); and

(ii) in compliance with the laws and regulations of the State authorizing the carrier to operate in the State in accordance with section 14501(c)(2)(A); *except with respect to*—

(I) *intrastate service provided by motor carriers of passengers that is not subject to the preemption provisions of section 14501(a);*

(II) motor carriers of property, motor private carriers, brokers, or freight forwarders, or their services or operations, that are described in subparagraphs (B) and (C) of section 14501(c)(2).

(III) the intrastate transportation of waste or recyclable materials by any carrier; or

(2) to require any interstate motor carrier or motor private carrier that also performs intrastate operations to pay any fee or tax which a carrier engaged exclusively in intrastate operations is exempt.

(Emphasis added.)

Section 14501(a)(1)(C) of the FAAAA relates to motor carriers of passengers and prohibits a state, political subdivision, or

---

4. We note that Regency raises seven separate issues in the section of its brief entitled "Statement of the Questions Involved." However, Regency failed to address these issues separately in the argument portion of its brief. Instead, Regency focused its argument on the issue described above. The remaining issues are therefore waived. *See* Pa. R.A.P. 2119(a) (argument shall be divided into as many parts as there are questions to be argued and shall include a discussion of the issue and citation to pertinent authorities); *In re Estate of Ryerss,* 987 A.2d 1231 (Pa. Cmwlth.2009) (arguments not properly developed in a brief will be deemed waived by appellate court).

interstate agency from enacting or enforcing any law, rule, regulation, or standard relating to "the authority to provide intrastate or interstate charter bus transportation." 49 U.S.C. § 14501(a)(1)(C). Read together, these provisions essentially prohibit a state agency, such as the Commission, from levying assessments against UCR-registered interstate motor carriers of passengers on their "charter bus transportation."

Although the UCR Act does not define the term "charter bus transportation," applicable federal regulations define "[c]harter transportation" as "transportation, using a bus, of a group of persons who pursuant to a common purpose, under a single contract, at a fixed charge for the motor vehicle, have acquired the exclusive use of the motor vehicle to travel together under an itinerary either specified in advance or modified after having left the place of origin." 49 C.F.R. § 390.5. As noted above, this section also defines "bus" as "any motor vehicle designed, constructed, and or used for the transportation of passengers, including taxicabs." *Id.*

In the present case, the Commission concluded that vehicles with seating capacities of 15 passengers or less, including the limousines used by Regency, did not fit within the definition of "charter bus transportation," and, hence, the limousine service provided by Regency was not exempt from state assessment under section 14504a(c)(1)(D) of the UCR Act. We agree with the Commission's interpretation.

In reaching this interpretation, the Commission relied on federal court cases, as well as previous precedent from the Commission itself, holding that a "charter bus" or "charter bus transportation" only includes vehicles with seating capacities of 16 or more passengers. *See Kozak* ("charter bus transportation" under the FAAAA is limited to charter service provided in vehicles with seating capacities of more than 15 passengers, including the driver); *Alex's Transportation, Inc. v. Colorado Public Utilities Commission,* 88 F.Supp.2d 1147 (D.Colo.), *affirmed,* 242 F.3d 387 (10th Cir.Colo.2000) (upholding a state law defining "charter bus" as a vehicle with a minimum seating capacity of 32 passengers); *Regulation of Group and Party Carriers,* 29 Pa. Bull. 515 (January 22, 1999) ("charter bus transportation" under the FAAAA is limited to group and party service provided in vehicles with seating capacities of 16 or more passengers, including the driver).

The court in *Kozak* rejected the argument currently raised by Regency, that a limousine or other vehicle with a seating capacity of fewer than 16 passengers qualifies as a charter bus. We note that, in considering the scope of the preemption set forth in section 14501(a)(1)(C), the court in *Kozak* relied upon the former version of 49 C.F.R. § 393.5, which was in effect at the time of passage of the UCR Act and defined "bus" as only including vehicles "designed to carry more than 15 passengers, including the driver." Citing this definition, as well as other federal legislation referencing vehicles with a seating capacity of 15 passengers and a congressional conference report stating that section 14501(a)(1)(C) was not intended to limit a state's ability to regulate taxicab or limousine livery service, the court in *Kozak* reasoned that Congress had drawn a "distinction ... between vehicles with a passenger capacity of 15 or less and those having a greater passenger capacity" and that Congress did not consider such vehicles as constituting "charter bus transportation." *Kozak,* 695 F.Supp.2d at 1300. Such reasoning is equally applicable to the present case.

■ Moreover, even applying the current definition of "bus" as found in the

federal regulations at 49 C.F.R. § 390.5, Regency's argument would fail. While this definition includes taxicabs, it makes no mention of limousines. In its brief to this Court, Regency attempts to include limousine service within this definition by virtue of its federal charter authority granted by the FMCSA. However, adopting Regency's rationale would essentially render the term "bus" under section 14501(a)(1)(C) meaningless, since all "charter" transportation would then qualify as "charter bus transportation." Similarly, adopting Regency's rationale would render the exception to preemption found at section 14504a(c)(1)(D)(ii)(I) of the UCR Act without any meaning or effect, as all motor carriers that hold both intrastate and interstate passenger operating authority would be exempt from the Commission's assessment. We decline to adopt such a rationale.

■ Finally, we address the issue of notice. In its brief to this Court, Regency notes the lack of assessment by the Commission in 2007 and 2008 and the purported lack of any notice of the Commission's assessment changes in 2009. However, the ALJ explained the lack of assessment by reference to section 14504a(c)(2), which was amended in 2008. The prior version precluded a state from requiring "any interstate motor carrier … that also performs intrastate operations to pay any fee or tax which a carrier engaged exclusively in **interstate** operations is exempt." (Emphasis added.) Since exclusively interstate carriers would have been assessed zero by the Commonwealth, the Commission was precluded from assessing the intrastate operations of UCR carriers at that time.

However, the amended section 14504a(c)(2) only precluded a state from requiring "any interstate motor carrier … that also performs intrastate operations to pay any fee or tax which a carrier engaged exclusively in **intrastate** operations is exempt." (Emphasis added.) In other words, this amendment permitted the assessment of the intrastate operations of interstate carriers up to the level of those carriers engaged exclusively in intrastate operations. The Commission's 2009 assessment report and instructions provided to all motor carriers included a letter from the Commission's Secretary dated February 23, 2009, specifically notifying carriers holding multiple authority from the Commission, which were also registered UCR carriers and, hence, were not previously assessed, that they "**will be assessed on that portion of revenue earned from non-UCR related passenger operations (e.g. taxi authority)**." (R.R. at 133a.) (Emphasis in original.) Thus, the Commission's change in position regarding assessments was based upon a change in the law and the Commission provided Regency with sufficient notice of this change.

Accordingly, the order of the Commission is affirmed.

### ORDER

AND NOW, this 16th day of May, 2012, the order of the Pennsylvania Public Utility Commission, dated January 14, 2011, is hereby affirmed.